## Commonwealth *v.* Weiner, Appellant.

246

Argued June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David H. Moskowitz,* with him *Weiss, Nelson & Moskowitz,* for appellant.

*Martin J. King,* Assistant District Attorney, with him *Stephen B. Harris,* First Assistant District Attorney, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., September 23, 1974:

Appellant was arrested for and convicted of disorderly conduct for violation of the proscriptions of Section 406 of the Penal Code.[1] Appellant here contends that his conduct did not constitute the crime of disorderly conduct. Appellant also contends that even if the statute is interpreted to include the conduct involved here, this conduct is constitutionally protected under the First Amendment to the United States Constitution. We do not agree with appellant's argument and therefore affirm the decision of the lower court.

The facts, as found by the lower court, indicate that several Warminster Township Police officers were dispatched to the scene of the arrest, a residential area, following the receipt of a number of complaints concerning excessive noise. There the officers observed a small group of people carrying signs and picketing while another person spoke over a portable public address system.

The system consisted of a microphone, amplifier, and two speakers mounted back to back on a tripod. The group, representing an organization known as Consumers Education and Protective Association, was demonstrating to protest an alleged failure of a home

---

[1] Act of March 23, 1970, P. L. 207, No. 84, §1, *as amended* (18 P.S. §4406), which provides in pertinent part: "Whoever wilfully makes or causes to be made any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents nearby, or near to any public highway, road, street, lane, alley, park, square, or common, whereby the public peace is broken or disturbed or the traveling public annoyed, is guilty of the offense of disorderly conduct. . . ."

improvement contractor to complete a job he had been paid to do by one of the organization's members. The contractor's home-office was nearby. Although the evidence as to the volume of noise was conflicting,[2] the hearing judge resolved the issue of credibility in favor of the Commonwealth. Since this finding is supported by the record, it will not be disturbed on appeal. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A. 2d 114 (1972).

The officers informed appellant that his group could picket peacefully but as several complaints had been made concerning the noise, they must discontinue use of the loud speaker. Appellant told the officers he had received permission from the police chief to use the public address system. The officers warned appellant several times about using the loud speaker and finally told him he would be arrested if he persisted in using it. Appellant again used the speaker declaring his civil rights were being violated, and the police then arrested him.

The Supreme Court of Pennsylvania in *Commonwealth v. Greene,* 410 Pa. 111, 189 A. 2d 141 (1963), has upheld the constitutionality of the statute in question. The statute does not forbid any specific speech but merely regulates the volume at which speech may be impressed upon the ears of the community. The act is neither overbroad nor vague but is limited and specific in nature. The late Mr. Justice MUSMANNO, writing for the Majority in the *Greene* case, ably discussed the statute and set forth the general rules and guidelines for its application. The application in the present case is in no way intended to proscribe constitutionally protected speech. Appellant was free to convey his mes-

---

[2] One police officer testified the noise from the loud speaker could be heard at a distance of 400 to 500 yards. (NT 13). Appellant and his witnesses testified that the loud speaker was "at a very low volume." (NT 27) See also NT 34, 39, 43, 46.

sage in a manner not calculated to disrupt the surrounding area.

Disorderly conduct caused by loud, boisterous and unseemly noise may occur (1) when the peaceable residents nearby are disturbed, *or* (2) where the public peace is disturbed near any public way or property, *or* (3) where the traveling public is annoyed.[3] In the present appeal, we are concerned with the effects of the noise on the "peaceable residents," and need not consider effects on the traveling public nor disturbances near public property.

The late Mr. Justice MUSMANNO logically explained that not every noise which annoys the peaceable residents will constitute disorderly conduct. "The public peace is not broken by any activity which properly forms an integral part of the movement of a civilized community, even though it produces noise and annoys residents. A railroad locomotive, with bells ringing and whistles shrieking, thundering over a crossing in a central section of the town, shakes the very ground over which it violently passes, causes buildings to vibrate and people in the immediate vicinity to clap hands over ears and nose to keep out the noises and acrid smoke. This mechanical monster certainly annoys the peaceable residents nearby, but it does not break the public peace, because peace is shattered only by acts of belligerency or disorder." 410 Pa. at 118, 189 A. 2d at 145. In addition, for noise to constitute disorderly conduct, it must be "unseemly." "Unseemly" has been defined as "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." 410 Pa. at 113, 189 A. 2d at 143.

Here we have the persistent use of a loud speaker in a residential area after the police gave notice that a

---

[3] Act of March 23, 1970, P. L. 207, No. 84, §1, *as amended* (18 P.S. §4406).

number of the "peaceable residents" had been disturbed and had complained. This type of conduct is not proper in respect to conventional society and is, therefore, unseemly. Further, the continued use of the loud speaker after the police had repeatedly instructed appellant to stop and warned of the consequences if the order was not complied with amounts to a belligerent act.

Since appellant's conduct fits the guidelines for the proper application of the statute, we affirm the lower court conviction of disorderly conduct.

JACOBS, J., concurs in the result.

---

DISSENTING OPINION BY HOFFMAN, J.:

We must determine in the context of this appeal whether an arrest under that section of our Penal Code which proscribes "disorderly conduct" violated the appellant's constitutional rights of free speech and assembly.

The appellant Max Weiner was on April 7, 1973, the Executive Director of the Consumers Education and Protective Association, Inc. ("CEPA"). On that date, he and members of his organization were engaged in peaceful picketing in a residential area of Warminster Township, Bucks County. The group's grievances were directed at a home improvement contractor, who maintained an office and residence in that location, and whom the group maintained had failed to complete a job after being paid for his services. During the course of the picketing, CEPA representatives employed a portable public address system. After receiving several complaints from residents, three police officers arrived on the scene. Appellant, who was then speaking, was instructed to discontinue the use of the loud speaker. Appellant responded that the Chief of Police of Warminster Township had granted the group permission to picket at the site and to use a loud

speaker in conjunction therewith. Without checking on the truth of the statement, police promptly arrested the appellant, charging him with violation of Section 406 of the Penal Code.[1] Following a conviction at the district justice level, appellant took an appeal to the Court of Common Pleas of Bucks County. After trial de novo, appellant was again convicted of the charge of disorderly conduct. This appeal followed.

This appeal involves the resolution of a fundamental issue of constitutional proportion. We must weigh the delicate balance that seeks at once to insure the peace and tranquility of the public-at-large and to guarantee to each and every citizen the right of free speech and assembly. Our system of government places such a high value on this right of the individual to voice his grievances that any effort to circumscribe or delimit these First Amendment guarantees must survive the sharpest of constitutional tests. As the Supreme Court of the United States said in *Gooding v. Wilson*, 405 U.S. 518, 521-522: "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.' Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942). Even as to such a class, however, because 'the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn,' Speiser v. Randall, 357 U.S. 513, 525, 78 S. Ct. 1332, 1342, 2 L. Ed. 2d 1460 (1958), '[i]n every case the power to regu-

---

[1] Section 406 of the Penal Code, Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4406, provides in pertinent part, as follows: "Whoever wilfully makes or causes to be made any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents nearby . . . whereby the public peace is broken or disturbed or the traveling public annoyed, is guilty of the offense of disorderly conduct. . . ."

late must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom,' Cantwell v. Connecticut, 310 U.S. 296, 304, 60 S. Ct. 900, 903, 84 L. Ed. 1213 (1940). In other words, *the statute must be carefully drawn or be authoritatively construed* to punish only unprotected speech and not be susceptible of application to protected expression." (Emphasis added).

The Supreme Court of the United States has repeatedly struck down statutes which were vague and overly broad, despite the fact that the conduct of the petitioner would have constituted "fighting words" or otherwise "abusive, vile and opprobrious" behavior. *Lewis v. City of New Orleans*, 42 U.S.L.W. 4241 (1974); *Gooding v. Wilson*, supra; *Ashton v. Kentucky*, 384 U.S. 195 (1966); *Cox v. Louisiana*, 379 U.S. 536 (1965). Because of ". . . the transcendent value to all society of constitutionally protected expression," *Gooding v. Wilson*, supra at 521, such ". . . attacks on overly broad statutes [are permitted] with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity . . ." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965). Therefore, where the appellate courts of the State have narrowly construed what would otherwise be an overly broad statute, convictions for the use of "fighting words" or disruptive and inflammatory conduct have been sustained. *Bachellar v. Maryland*, 397 U.S. 564 (1970); *Street v. New York*, 394 U.S. 576 (1969); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).

The Pennsylvania Supreme Court has upheld the constitutionality of Section 406 of the Penal Code proscribing "disorderly conduct", but has given the statute a narrow area of application which it deemed necessary to be consistent with the First and Fourteenth Amendments. *Commonwealth v. Greene*, 410 Pa. 111,

189 A. 2d 141 (1963). Noting that the statute requires an offender to have been "loud, boisterous *and unseemly"*, the Supreme Court held that "[t]he cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult or disorder. . . . In Pennsylvania the crime of disorderly conduct embraces activity which disturbs the peace and dignity of a community." 410 Pa. at 115-116. The Court rejected Commonwealth's argument that the statute could regulate "noise" *per se.* "While noise may break tranquility, upset rest, destroy sleep and fracture serenity, it does not of itself break the public peace, an indispensable feature of the crime of disorderly conduct, when the traveling public is not disturbed." 410 Pa. at 116. Tracing the high incidence of noise in our twentieth-century age of technology, the Court concluded that conduct "does not break the public peace, because peace is shattered only by acts of belligerency or disorder. . . . For a defendant to be guilty of the crime of disorderly conduct, he must have, of his own volition, committed a disorder or that, because of what he did, disorder followed in the wake of his conduct. Disorderly conduct must defy the given order of any given community." 410 Pa. at 118, 119-120.

The courts of this Commonwealth have sustained convictions for disorderly conduct in the following situations: where the defendant had blocked traffic with his automobile and used vile, threatening language against other motorists, *Commonwealth ex rel. Jenkins v. Costello,* 141 Pa. Superior Ct. 183, 14 A. 2d 567 (1940); defendants, members of a religious sect, employed a high-volume loud speaker and proselytized on a door-to-door campaign often against the will of the residents, *Commonwealth v. Palms,* 141 Pa. Superior Ct. 430, 15 A. 2d 481 (1940); defendants called out of windows using abusive, reviling epithets, causing

onlookers to congregate and blocking traffic, *Commonwealth v. Cooper,* 95 Pa. Superior Ct. 382 (1929); see also, *Commonwealth v. Thompson,* 442 Pa. 616, 274 A. 2d 762 (1971), wherein the Supreme Court affirmed per curiam a conviction of assault and battery on a police officer. A dissenting opinion by Justice EAGEN highlighted the facts surrounding the assault which took place in resistance to an "arrest" for disorderly conduct. The dissent could not accept the legal justification of the arrest for disorderly conduct where abusive language was directed at the police officer and not at the community-at-large.

In the instant case, no effort was made by the Commonwealth to establish either an annoyance or disturbance to the "travelling public" nor conduct by the appellant rising to the characterization required by the Penal Code, i.e., "loud, boisterous *and* unseemly". Appellant and the members of CEPA were engaged in peaceful picketing, allegedly with the express permission of the Chief of Police of the township. The evidence shows that the appellant was broadcasting a message over a loud speaker aimed at attacking a contractor's breach of contract. There is no evidence that the language used was abusive, vile or constituted "fighting words". The mere fact that the appellant was employing a loud speaker in the course of the demonstration may not be punished. The Supreme Court of the United States has reversed convictions which were aimed at regulating the use of loud speakers or public address systems in the exercise of an individual's rights of free speech and assembly. See, e.g., *Saia v. New York,* 334 U.S. 558 (1948).

There is some evidence that the police had responded to several complaints from the residents, but this is insufficient to constitute the crime of disorderly conduct. As the Supreme Court of the United States stated in *Coates v. Cincinnati,* 402 U.S. 611, 615 (1971):

"But the vice of the ordinance lies not alone in its violation of the due process standard of vagueness. The ordinance also violates the constitutional right of free assembly and association. Our decisions establish that mere public intolerance or animosity cannot be the basis for abridgment of these constitutional freedoms. (Citations omitted) The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct."

In short, the arrest and conviction were grounded not on any conduct disturbing the general peace of the community but because the appellant failed to cease using the loud speaker after the police requested him to do so. During the trial, one of the police officers claimed that the use of a loud speaker in the township was "discretionary", and a matter to be regulated by the police should such use be deemed "annoying". In addition to the fact that such a discretionary right of police to regulate the right of individuals to exercise their right of free speech would be unconstitutional, a subsequent arrest for failure to comply with the order of the police may not be justified. As the Supreme Court of the United States said in *Gregory v. Chicago,* 394 U.S. 111, 112 (1969) : "Petitioners' march, if peaceful and orderly, falls well within the sphere of conduct protected by the First Amendment. . . . However reasonable the police request may have been and however laudable the police motives, petitioners were charged and convicted for holding a demonstration [the actual arrest and conviction was on the charge of disorderly conduct], not for a refusal to obey a police

officer." There is no evidence that appellant's picketing and use of a loud speaker was in any manner nonpeaceful nor disorderly. That section of the Penal Code which proscribes disorderly conduct does not include as an offense the refusal to obey a police officer.

I believe that appellant's conduct did not fall within the proscriptions of Section 406 of the Penal Code, as construed and interpreted by our Supreme Court in *Commonwealth v. Greene,* supra. My review of the record leads me to conclude that appellant's conduct constituted a lawful exercise of his First and Fourteenth Amendment rights, and that the arrest was an unlawful infringement of those rights.

Judgment of sentence should be reversed, conviction vacated, and appellant ordered discharged.

SPAETH, J., joins in this dissenting opinion.

