NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1961
_____

ANTHONY FAVATA,

Appellant

v.

KEVIN SEIDEL
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 3:11-cv-00551)
District Judge: Honorable Richard P. Conaboy
_____

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2012
_____

Before: HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: January 28, 2013)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

The instant appeal arises from the District Court's resolution of cross-motions for

summary judgment addressing First Amendment retaliatory prosecution. Appellant

Anthony Favata ("Appellant" or "Favata") brought suit against Appellee Kevin Seidel

("Appellee" or "Seidel"), a trooper with the Pennsylvania State Police, after the latter cited Appellant for disorderly conduct in the wake of an altercation that occurred on a highway exit ramp. After Appellee prevailed on its cross-motion for summary judgment, Appellant filed this timely appeal. For the reasons discussed below, we will affirm the District Court.

## I. Facts and Procedural History

Because we write primarily for the benefit of the parties, we recount only the facts essential to our discussion. On October 23, 2010, Appellee Seidel responded to a 911 call regarding an incident that had occurred on a highway exit ramp near the City of Wilkes-Barre. The caller, Appellant Favata, met Seidel at a gas station close to the highway and explained that he had been involved in an altercation with another driver, Dale Rapson ("Rapson"). According to Favata, he was making his way along the exit ramp when the car behind him — driven by Rapson — began attempting to pass him. This involved Rapson repeatedly honking his horn and driving aggressively. In response, Favata admitted to deploying a well-known one-fingered gesture. Apparently angered by the gesture, Rapson then left his vehicle and began banging on the window of Favata's car and attempting to open the door — this prompted Favata to once again deploy his middle finger. According to Favata, Rapson only retreated back to his car after noticing that Favata was dialing the police on his cell phone. After hearing Favata's account of

2

the incident, Seidel indicated that he would attempt to contact Rapson, but cautioned that Favata too could be cited for disorderly conduct as a result of the incident.[1]

Seidel did contact Rapson, who provided a somewhat different account of the October 23 incident. According to Rapson, it was Favata's aggressive driving that prompted the altercation. Specifically, as Rapson was attempting to change lanes on the exit ramp, Favata allegedly cut him off, nearly forcing Rapson to collide with Favata's car. A short while down the road, Favata once again veered to block Rapson's attempts at passing him, this time nearly forcing Rapson into the guardrail. In both cases, Rapson reported that Favata was laughing at him and, at least on one occasion, displaying the middle finger. After twice being cut off by Favata, Rapson exited his vehicle, approached Favata's car, and "knocked" on his window. (App. at 113.) In response, Favata once again laughed, raised high the middle finger, and then began dialing a number on his cell phone. Thereafter, Rapson returned to his car and left.

In light of the two conflicting accounts, Seidel issued non-traffic citations to both Favata and Rapson. Favata received a citation for disorderly conduct, pursuant to 18 Pa. Cons. Stat. Ann. § 5503(a)(4), which described the "nature of the offense" as follows: "Defendant caused annoyance to another by displaying the middle finger to a motorist that was already in an agitated state. This conduct served no legitimate purpose." (*Id.* at

---

[1] According to Favata's deposition testimony, Seidel specifically indicated that the citation would be based on Favata's use of the middle finger and informed Favata that "middle finger citations often are thrown out of court." (App. at 95.)

84.)[2] Both motorists received their citations on October 24, 2010, and both called Seidel to inquire about their respective citations. Thus, Rapson was allegedly informed that the citations were issued "to teach you guys a lesson," (*id.* at 114), while Seidel told Favata that the two drivers should "go down [to the court], shake hands, [and] call it a day," (*id.* at 97, 138). Seidel subsequently withdrew the charges against both motorists at a January 26, 2011 hearing before a Magisterial District Judge.

In March 2011, Favata filed suit against Seidel. Count I of Favata's complaint, predicated on 42 U.S.C. § 1983, alleged a claim for First Amendment retaliation. Count II alleged a claim for malicious prosecution.[3] In early 2012, both Favata and Seidel moved for summary judgment. In March 2012, the District Court denied Favata's motion and granted summary judgment for Seidel, holding that the existence of probable cause defeated Favata's Count I claim for First Amendment retaliation. *Favata v. Seidel*, No. 3:11-CV-551, 2012 WL 1005014, at *5 (M.D. Pa. Mar. 23, 2012). Favata's timely appeal is now before us.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

---

[2] The record does not contain Rapson's citation. However, since Rapson is not a party to this case, the exact nature of his charge is not relevant to our discussion.

[3] Favata voluntarily withdrew this claim, agreeing with Seidel that "the state law malicious prosecution claim is barred by the doctrine of sovereign immunity." *Favata v. Seidel*, No. 3:11-CV-551, 2012 WL 1005014, at *1 n.1 (M.D. Pa. Mar. 23, 2012).

4

We review the District Court's order granting summary judgment de novo. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). "To that end, we are 'required to apply the same test the district court should have utilized initially.'" *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md.*, 989 F.2d 635, 637 (3d Cir.1993)).

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur*, 601 F.3d at 216 (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed. R. Civ. P. 56(c))).[4] To be material, a fact must have the potential to alter the outcome of the case. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216 (internal quotation marks omitted). In determining whether summary judgment is warranted "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Chambers*, 587 F.3d at 181 (quoting

---

[4] Fed. R. Civ. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Further, [w]e may affirm the District Court on any grounds supported by the record." *Kossler v. Cristani*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (alteration in original) (internal quotation marks omitted).

Moreover, "[a]lthough denials of summary judgment usually are not appealable, we have repeatedly made clear that when an appeal from a denial of summary judgment is raised in tandem with an appeal of an order granting a cross-motion for summary judgment, we have jurisdiction to review the propriety of the denial of summary judgment by the district court." *Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 501 n.6 (3d Cir. 2008) (internal quotation marks omitted).

### III. Analysis

To prevail on a claim for First Amendment retaliation, Appellant must allege and prove "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Additionally, in a case of retaliatory prosecution, Appellant must allege and prove "an absence of probable cause to support the underlying criminal charge." *Hartman v. Moore*, 547 U.S. 250, 252 (2006); *see also Miller v. Mitchell*, 598 F.3d 139, 153-54 (3d Cir. 2010) (probable cause requirement applies even where the same individual acted as both investigator and prosecutor, and even where the individual made "explicit" retaliatory threats).

6

While the existence of probable cause in a § 1983 case is typically a question left for the jury, the district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). As our discussion below demonstrates, this is such a case. Probable cause existed if "the facts and circumstances within [Appellee's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Appellant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). Thus, it is not material to the probable cause inquiry whether the Appellant actually committed the offense; "[p]robable cause exist[ed] if there [was] a 'fair probability' that the [Appellant] committed the crime at issue." *Wilson*, 212 F.3d at 789 (quoting *Sherwood*, 113 F.3d at 401). Moreover, as the formulation above suggests, the inquiry is objective and based on the facts available to Appellee at the time he issued the citation. *Egolf v. Witmer*, 526 F.3d 104, 114 (3d Cir. 2008) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). As a consequence, manifestations of Appellee's subjective opinion regarding the October 23 incident are immaterial to our analysis.[5]

---

[5] For purposes of evaluating the existence of probable cause, therefore, we set to the side Appellee's alleged statements to Appellant and Rapson regarding the motivation behind the citation. Likewise, we ascribe no particular weight to the text in the "Nature of the Offense" space on Appellant's citation for disorderly conduct.

Appellee charged Appellant with violating 18 Pa. Cons. Stat. Ann. § 5503(a)(4), which, in relevant part, reads as follows:

> (a) Offense defined. — A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>  . . . .
>> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. Cons. Stat. Ann. § 5503. The same section defines "public" as anything "affecting or likely to affect persons in a place to which the public or a substantial group has access . . . includ[ing] . . . highways." *Id.* Furthermore, according to the Supreme Court of Pennsylvania, "whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. 'The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder.'" *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) (quoting *Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963)).

The record indicates that a prudent officer in Appellee's position could have reasonably inferred that Appellant — due to his aggressive driving — had engaged in disorderly conduct. Before issuing any citations, Appellee had already heard the differing accounts of the October 23 altercation from Appellant and Rapson. Thus, Appellee was aware that, according to Appellant, Rapson had tailgated his car, had driven erratically, had repeatedly honked his horn and, after being presented with the middle finger, had disembarked from his car to pound on Appellant's window and attempt to open the car door. At the same time, Appellee was also aware that, according to Rapson,

8

Appellant had been driving very aggressively, had been repeatedly cutting Rapson off and — at least according to Rapson's account — had been deriving no small amount of amusement from his "vehicular brinksmanship." *See Favata*, 2012 WL 1005014, at \*5. Rapson had also informed Appellee about Appellant's use of the middle finger and had admitted to exiting his car in order to confront Appellant. Moreover, both drivers admitted that the altercation occurred on the highway exit ramp. Therefore, we hold that, as a matter of law, probable cause existed to charge Appellant with violating § 5503(a)(4).

Consequently, we find that the existence of probable cause necessitates the denial of Appellant's motion for summary judgment and the granting of summary judgment in favor of Appellee pursuant to the dictates of *Hartman* and *Miller*.[6]

## IV. Conclusion

For the aforementioned reasons, we will affirm the District Court's denial of Appellant's motion for summary judgment and its grant of Appellee's motion for summary judgment.

---

[6] While Appellee's alleged disagreement with Appellant's choice of expression would be relevant to other elements of a First Amendment retaliatory prosecution claim, it does not weigh on our analysis of probable cause. Thus, we need not reach the question of whether the middle finger, when directed at another motorist during an altercation, qualifies as "fighting words" under *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). Likewise, we need not address Appellee's qualified immunity argument based on the grant of summary judgment to Appellee.