J-A18035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM PARKER | : | |
| | : | |
| Appellant | : | No. 397 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 6, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007325-2019

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:    **FILED: SEPTEMBER 24, 2021**

Appellant William Parker appeals *pro se* from the judgment of sentence imposed following his conviction for disorderly conduct, graded as a summary offense.[1] Appellant argues that there was insufficient evidence to support his conviction. Following our review, we reverse.

The trial court summarized the underlying facts of this matter as follows:

> [Appellant] is the founder of a company called VendSpin. [Appellant] sought investment from Innovation Works for VendSpin. Innovation Works is a seed stage investor which provides early-stage investments and other business resources to tech companies. On August 14, 2018, [Appellant] attended an Innovation Works cook-out seeking investment in his company.[2]

---

[1] 18 Pa.C.S. § 5503(a)(1).

[2] The event was held at the Innovation Works office space, which has a "large collaboration space" with a "glass garage door that can be lifted up and then it goes out to an outdoor patio." **See** N.T. Trial, 2/6/20, at 101. The CEO of
*(Footnote Continued Next Page)*

> [Appellant] approached Jeffery McDaniel, a portfolio executive of Innovation Works, at the event asking where his money was. When Mr. McDaniel advised that Innovation Works was not investing in [Appellant's] company at this time, [Appellant] became extremely agitated and began shouting at Mr. McDaniel. [Appellant] then approached Richard Lunak, the president and CEO of Innovation Works. [Appellant] began shouting, becoming extremely disruptive, screaming profanities, demanding [that] Innovation Works invest in his company. [Appellant] continued to scream at Mr. Lunak as he backed up[,] asking [Appellant] to calm down. Mr. McDaniel then came between [Appellant] and Mr. Lunak and [Appellant] subsequently shoved Mr. McDaniel into Mr. Lunak[,] causing them to both stumble. Ultimately, several attendees at the event attempted to calm [Appellant] down and remove him from the event.[3]

Trial Ct. Op., 6/11/20, at 1-2.

The Commonwealth subsequently filed a criminal information charging Appellant with disorderly conduct and harassment for the August 2018 incident.[4],[5] *See* Criminal Information, 6/14/19, at 1. On February 6, 2020, the trial court found Appellant guilty of summary disorderly conduct in the instant matter and not guilty of the remaining charges. *See* N.T. Trial, 2/6/20,

_____

Innovation Works testified that the event was for "members of the Innovation Works community that included investors or stakeholders, [and] other entrepreneurs." *See id.* at 57.

[3] The record reflects that after multiple people urged Appellant to leave the event, he did so on his own accord. *See* N.T. Trial, 2/6/20, at 91.

[4] 18 Pa.C.S. § 2709.

[5] The Commonwealth also filed a separate criminal information charging Appellant with disorderly conduct, trespass, and related offenses for a June 2019 incident in which Appellant allegedly used a bullhorn to scream obscenities at Innovation Works employees while he stood outside the office on a public street. *See* Docket No. 4269-2019. However, Appellant was acquitted of those charges at trial.

at 147. That same day, the trial court sentenced Appellant to ninety days' probation.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[6] The trial court issued a responsive Rule 1925(a) opinion concluding that there was sufficient evidence to support his conviction for disorderly conduct.

On appeal, Appellant raises the following issues:

1. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that [Appellant] acted with "intent to cause public inconvenience, annoyance, or alarm, or recklessly creat[ed] a risk thereof[,]" as required to sustain a conviction of disorderly conduct under 18 Pa.C.S. § 5503(a).

2. Whether the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt that the incident giving rise to [Appellant's] conviction of disorderly conduct occurred in a public place as defined in 18 Pa.C.S § 5503(c) and relevant case law.

Appellant's Brief at 5 (some formatting altered).

Both of Appellant's claims challenge the sufficiency of the evidence supporting his conviction for disorderly conduct. *Id.* at 12. First, Appellant

_____

[6] We note that after Appellant filed his *pro se* notice of appeal, counsel from the Allegheny County Public Defender's Office entered his appearance on Appellant's behalf. Counsel subsequently filed a Rule 1925(b) statement and appellate briefs with this Court. On January 13, 2021, counsel filed a motion to withdraw and requested that we remand the matter for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On remand, the trial court conducted a **Grazier** hearing and permitted Appellant to proceed *pro se.* Ultimately, after Appellant indicated his intention to file a new brief, this Court reset the briefing schedule and gave Appellant forty days to file his appellate brief. Appellant filed his *pro se* brief on June 1, 2021.

argues that "the Commonwealth's evidence was insufficient to demonstrate that [he] either intended or consciously disregarded a substantial and unjustifiable risk that his conduct would result in public inconvenience, annoyance, or alarm." *Id.* at 14. Appellant asserts that "while Mr. Lunak may have felt subjectively threatened by [Appellant's] close proximity and 'agitated' demeanor, there was no objective basis for the inference that [Appellant] recklessly disregarded (much less specifically intended) the possibility that his confrontation would cause public inconvenience, annoyance, or alarm among the remaining attendees." *Id.* at 14-15. Likewise, Appellant argues that "while [his] swat of Mr. McDaniel's arm 'may have been intemperate, unreasonable, or even unjustified,'" that conduct was insufficient to prove that he intended to cause or recklessly disregarded the risk of causing public inconvenience or alarm. *Id.* at 15-16.

Appellant also asserts that the Commonwealth failed to prove that the incident occurred in a public place, as required for a disorderly conduct conviction under Section 5503(a)(1). *Id.* at 18. In support, Appellant argues that the incident "took place at an event held by Innovation Works," and that, similar to the private party in **Commonwealth v. Lawson**, 759 A.2d 1, 5 (Pa. Super. 2000), "the Commonwealth introduced no evidence that [the] event was public in nature." *Id.* at 19. Instead, Appellant notes that Mr. McDaniel "described the event in question as one for members of the Innovations Works community that included investors or stakeholders [and] other entrepreneurs," which suggests that "attendance was limited to a

predetermined set of guests." *Id.* Appellant concludes that "[b]ecause the Commonwealth failed to present any evidence that [his] conduct took place in a public setting and therefore risked public disturbance or unruliness, his conviction must be reversed." *Id.* at 20.

The Commonwealth responds that "the evidence demonstrated that [Appellant] did indeed specifically intend to cause public inconvenience, annoyance, or alarm." Commonwealth's Brief at 12. Specifically, the Commonwealth contends that during Appellant's interactions with Mr. Lunak and Mr. McDaniel, he "began shouting and uttering profanities" towards the middle of the room and also loudly claimed that Innovation Works was "not investing in African American-led companies." *Id.* The Commonwealth asserts that even if Appellant's "subjective intent had not been to disturb any of the other guests and instead he had only wanted to yell at the higher-ups whom he felt were withholding money from him," his conduct was sufficient to demonstrate that he "consciously disregarded the risk that public inconvenience, annoyance, and alarm would ensue as a result of his actions." *Id.*

The Commonwealth also argues that although "the location at which Innovation Works had held its cookout was presumably private, it was, on the day in question at least, accessible to hundreds of invited guests." *Id.* at 19; *see also id.* at 17-18 (discussing **Commonwealth v. O'Brien**, 939 A.2d 912 (Pa. Super. 2007) and **Commonwealth v. Whritenour**, 751 A.2d 687 (Pa. Super. 2000)). The Commonwealth contends that, "by any reasonable

- 5 -

interpretation, [Appellant's] actions were quite public, occurring as they did in an outdoor setting to which access was afforded to a substantial group of people, many of whom, it would be fair to infer, would not have had any idea who [Appellant] even was." *Id.* The Commonwealth contends that "these circumstances—the nature of the event, the number of people in attendance, the fact that many of them were undoubtedly strangers to [Appellant]— distinguish the instant matter from *Lawson*." *Id.* at 19 n.7. Therefore, the Commonwealth concludes that Appellant is not entitled to relief.[7]

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

---

[7] Notably, the Commonwealth does not dispute that the incident occurred at a private event. *See* Commonwealth's Brief at 19. Instead, the Commonwealth argues that the statutory definition of 'public' applies to the instant matter because the event was "accessible to hundreds of invited guests." *Id.* at 19.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

Pursuant to Section 5503 of the Crimes Code, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior[.]"  18 Pa.C.S. § 5503(a)(1).

Section 5503(c) defines 'public' as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public."  18 Pa.C.S. § 5503(c).

Our Supreme Court has explained that

Section 5503 is aimed at protecting the **public** from certain enumerated acts.  Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a **public** disturbance.  The cardinal feature of the crime of disorderly conduct is **public unruliness** which can or does lead to tumult and disorder. . . .

Although Section 5503 as a whole is aimed at preventing public disturbance, it accomplishes this aim by focusing upon certain individual acts, which, if pursued with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, constitute the offense of disorderly conduct.  These individual acts focus upon the offender's behavior.  One such act . . . is "engag[ing] in fighting or threatening, or in violent or tumultuous behavior."  18 Pa.C.S. § 5503(a)(1).  Significant is the fact that the General Assembly did not require that this prohibited act be directed at a certain number of persons that could qualify as "the public."  Therefore, when an offender engages in fighting or threatening, or in violent or tumultuous behavior **in a public arena**, even when that conduct is directed at only one other

- 7 -

person, the offender may be subject to conviction for disorderly conduct.

***Commonwealth v. Fedorek***, 946 A.2d 93, 100 (Pa. 2008) (some citations omitted) (some formatting altered); ***see also Commonwealth v. Greene,*** 189 A.2d 141, 145 (Pa. 1963) (holding that the crime of disorderly conduct "is intended to preserve the public peace").

This Court has held that "the size of any neighborhood, any premises or private community does not dictate whether or not that premises, neighborhood, or community is 'public' for purposes of the disorderly conduct statute." ***O'Brien***, 939 A.2d at 914. Instead, this Court has focused on whether the area "constitutes 'a place to which the public or a substantial group'" has access. ***Id.***

In ***Lawson***, the defendant was convicted of disorderly conduct for an incident that occurred during a college party inside of an apartment. ***Lawson***, 759 A.2d at 2-3. On appeal, the defendant argued that, because the entire confrontation took place inside of a private residence, there was insufficient evidence to prove that he intended to cause public inconvenience or alarm. ***Id.*** at 5. Ultimately, this Court agreed, noting that the apartment party was limited to "renters of the apartment and their invited guests" and concluding that places that are "not open to the public, [but] [where] several members of the public [have] been invited[,]" are not 'public' under 18 Pa.C.S. § 5503(c). ***Id.*** at 5-6.

In **Whritenour** and **O'Brien**, this Court held that a private road located inside of a private neighborhood could be considered 'public' for purposes of Section 5503(c). **See O'Brien**, 939 A.2d at 914; **see also Whritenour**, 751 A.2d at 688. In both cases, the Court reasoned that although the roads were labeled as "private," they were accessible to a substantial group of the public. **See Whritenour**, 751 A.2d at 688 (noting that the road was "traversed by members of the community and their invitees or licensees" which "included residents of the homes in the community, their guests and employees, as well as visitors attending religious events, users of the public library located in the community, and delivery people of all kinds"); **see also O'Brien**, 939 A.2d at 914 (stating that, like in **Whritenour**, the private road was "'a place to which the public or a substantial group,' namely the surrounding community's residents and their invitees, ha[d] access").

Here, in concluding that there was sufficient evidence to support Appellant's conviction for disorderly conduct under Section 5503(a)(1), the trial court stated: "The Commonwealth presented evidence that [Appellant] attended a [barbecue] event held by Innovation Works for investors, stakeholders and other entrepreneurs. At the event, [Appellant] became irate, threatening Mr. McDaniel and Mr. Lunak both verbally and physically causing a significant disruption and alarm to the event and individuals attending." Trial Ct. Op. at 4.

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was insufficient

evidence to establish Appellant's intent to cause public inconvenience. *See Palmer*, 192 A.3d at 89; *see also* 18 Pa.C.S. § 5503(a)(1), (c).

As discussed previously, the record reflects that Appellant confronted Mr. Lunak and Mr. McDaniel in the Innovation Works office during an annual meeting that was open to investors, stakeholders, and other entrepreneurs. *See* N.T. Trial, 2/6/20, at 57. Like in *Lawson*, attendance at the Innovation Works event was limited to a specific group of individuals. *See Lawson*, 759 A.2d at 5-6. Further, the Commonwealth did not present any evidence or testimony to establish that the event, or even the Innovation Works office, was accessible to a substantial group of the public.[8,9] Although a large number of guests attended the event, that fact does not transform private property

---

[8] As noted previously, the record reflects that the entire event was held within the confines of the Innovation Works office space, which included an outdoor patio area. However, we note that the trial testimony did not establish that the patio was open to the public. Instead, it appears that the patio area was only accessible through the Innovation Works office. *See* N.T. Trial, 2/6/20, at 101 (reflecting Mr. Lunak's testimony that the event took place in the office, which includes an outdoor patio area, but that guests had to use the front door of the office to exit the event). In any event, it was the Commonwealth's burden to prove that the incident occurred in a public place, rather than Appellant's burden to establish that the event was private. *See Commonwealth v. Cosnek*, 836 A.2d 871, 874 (Pa. 2003) (reiterating that the Commonwealth bears the "never shifting burden to prove each element of the crime charged beyond a reasonable doubt" and a criminal defendant has no duty to produce evidence in his own defense at trial). Therefore, in the absence of any evidence proving the public element required for disorderly conduct, Appellant's conviction cannot stand.

[9] We emphasize that none of the alleged behavior at this docket occurred on the outdoor patio. *See* N.T. Trial, 2/6/20, at 60, 101 (establishing that Appellant confronted Mr. Lunak inside the office space, after Mr. Lunak had returned from the patio area).

into a 'public' place for purposes of the disorderly conduct statute. **See O'Brien**, 939 A.2d at 914 (stating that the size of a premises or community does not dictate whether it is "'public' for purposes of the disorderly conduct statute'").

Therefore, because the Commonwealth failed to establish that the incident occurred in public or in a place to which a substantial group **of the public** had access, there is insufficient evidence to prove that Appellant intended to cause or recklessly disregarded the risk of causing public inconvenience or alarm. **See Fedorek**, 946 A.2d at 100 (stating that "Section 5503 is aimed at protecting the **public** from certain enumerated acts" and reiterating that disorderly conduct occurs when a defendant "engages in fighting or threatening, or in violent or tumultuous behavior **in a public arena**"). Accordingly, we reverse.

Judgment of sentence reversed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2021