Commonwealth *v.* James, Appellant.

Argued November 17, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before DUMBAULD, J., specially presiding, without a jury.

*Pearse O'Connor,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., January 16, 1962:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Allegheny County by Herbert James, the defendant-appellant, after conviction of the charge of aggravated assault and battery; and from the denial by the court en banc of his motions in arrest of judgment and for a new trial.

He was tried before Judge DUMBAULD, a visiting judge from Fayette County, without a jury and found guilty. Post trial motions in arrest of judgment or for a new trial were argued before a court en banc consisting

of WEISS, GRAFF, McCREARY and DUMBAULD, JJ., and were denied.

As the defendant puts it, the issue is factual. It is whether the credible evidence is of sufficient weight to sustain a charge of aggravated assault and battery.

The defendant, Herbert James, is a police officer of the City of Pittsburgh. He was assigned to the investigation of lottery activities in that city. On June 2, 1959, he made an arrest of one, Alfred Murgie, a known numbers operator, in the B & J Tavern, the place of business of Bane Pivirotto, the private prosecutor. At the time of this arrest Bane Pivirotto was not present in his tavern. On June 4, 1959, together with other police officers, the defendant approached the B & J Tavern and saw Murgie in the neighborhood. He took him into custody and they all entered the tavern. The prosecutor was behind the bar when they entered. The evidence of what took place thereafter is conflicting. The testimony of the defendant and his witnesses, and the testimony of the private prosecutor and his witnesses, tell two divergent stories of what took place in the tavern. The defendant contended that he was performing his duties as a police officer in seeking evidence of numbers writing in the tavern; that he went behind the bar for that purpose; that he did not have a search warrant and was in plain clothes; that he made his identity known to the prosecutor; that the prosecutor attempted to resist his efforts to perform his duties and he then used such force, not violent in any degree, as was necessary to place the prosecutor in custody.

The prosecutor testified that the defendant, not disclosing his identity, in plain clothes, without a warrant, rushed behind the bar and opened his cash register; that when the prosecutor remonstrated, the defendant seized him, beat him with his fists and threw him violently against the bar and into a booth; that as a

result of the beating he suffered severe bruises to his back, neck, leg and spine, a bruised kidney so that he was urinating blood, and two cracked ribs; and that as a result of this beating he was hospitalized for four days.

True, the officer denied the use of excessive force and contended that everything was done in the course of his duty as a police officer. The question has been raised in the argument by both the defendant and the district attorney's office as to whether or not this did not negative any "unlawfulness" and "maliciousness" as required in the crime of aggravated assault and battery.

The defendant, however, chose to go to trial before a judge without a jury and so questions of law and fact rested with the court. And it may well be, as Judge DUMBAULD put it, "But a decision by the Court is more likely to follow with greater strictness and exactitude the dictates of logic and the law. The Court will feel greater compulsion to draw the inferences from testimony which are indicated by the inexorable mandates of logical reasoning, and to attach to established facts the precise legal consequences prescribed by the applicable rules of law." Suffice it to say that the question of "maliciously" and "unlawfully" were before the court and under all the evidence, "as a trier of facts the court unhesitatingly found the defendant's guilt had been established beyond a reasonable doubt."

"In considering motions of defendants for a new trial and in arrest of judgment following conviction, the court must accept as correct the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom." *Com. v. Jackson*, 187 Pa. Superior Ct. 2, 3, 144 A. 2d 249 (1958). A motion for a new trial on the ground that the verdict is against the evidence is addressed to the sound discretion of the trial judge and his action

can only be reviewed here for abuse of discretion. In this case the evidence was in sharp conflict. The judge, sitting as a jury, could have accepted the defendant's story but the facts to be found and the credibility of the witnesses were entirely for him as the jury: *Com. v. Ransom,* 169 Pa. Superior Ct. 306, 82 A. 2d 547 (1951).

The opinion of the court en banc, as written by the trial judge, summarizes the testimony which he characterized as "substantial evidence in the record which is sufficient to sustain a verdict of guilty", as follows:

"The prosecutor, Bane Pivirotto, with every appearance of truthfulness, testified that while waiting on a customer he saw defendant, a stranger in plain clothes, open the cash drawer back of the bar. When Pivirotto protested, defendant grabbed him, punched him in the back, dragged him from behind the bar, and threw him violently into a booth, and Pivirotto collapsed at the police station, and was taken to the hospital by the officers. He was hospitalized for four days. Defendant had no search warrant when he opened the cash register.

"Photographs of Pivirotto's bruises were received in evidence, as well as hospital reports produced by Caroline Shrum, record clerk at Allegheny General Hospital. The X-ray report showed a fracture of the ninth rib. His bruises were also described by his daughter as she observed them in the hospital on June 5th.

"The prosecutor's narrative of events was corroborated by an eyewitness, Samuel deMarco, over 70, and not very observant; and also by another apparently truthful and intelligent eyewitness, Dorothy G. Dawson, who stopped in the cafe that day to go to the ladies' room. This witness, both on direct and cross-examination, gave a detailed account of what happened, and in particular stated that defendant was ransacking the cash drawer before Pivirotto came up and the

altercation began. She also demonstrated in court the manner in which the scuffle took place and the officer seized and struck Pivirotto.

"Defendant himself admits that he had no search warrant. He denies having ransacked the cash register or drawer; but Squire Frank Sanford testified that at a hearing on a cognate case, the defendant had admitted that he was looking in a cigar box and took some money from it, which he replaced in the box before putting Pivirotto in a booth.

"Defendant's version of the scuffle is that he placed Pivirotto under arrest for disorderly conduct, dragged him out from behind the bar, released his grip, escorted him to a booth, and said 'Will you sit down in the booth until the wagon comes?'. Defendant did not know Pivirotto and had never seen him before. Pivirotto likewise testified that he had not known James before this incident. Other officers corroborated the story of defendant that he had requested Pivirotto to take a seat in the booth, and had not thrown him into the booth. Nevertheless, the trier of the facts, in view of Pivirotto's injuries, could well have concluded that the altercation took place as described by the Commonwealth's witnesses, rather than in the polite fashion of molliter manus imposuit recounted by defendant and his witnesses." There was no abuse of discretion.

Judgment affirmed.

MONTGOMERY, J., dissents and would grant a new trial.