## Fizzano Bros. Concrete Products, Inc. v. Ceritano Brickwork, Inc.

*Robert J. Scallan*, for plaintiff.
*George P. Noel*, for defendant.

REED, Jr., J., April 10, 1972.—Plaintiff, Fizzano Bros. Concrete Products, Inc. (Fizzano) brought suit against defendant, Ceritano Brickwork, Inc. (Ceritano) in assumpsit to recover $13,309.97, allegedly due and owing. Ceritano then brought a separate suit against Fizzano to recover $5,911.86 allegedly due and owing to Ceritano. The suits, arising out of the same transaction were consolidated and tried by judge without jury. At conclusion of trial, the trial judge awarded a verdict to Fizzano for $13,309.97 in its suit against Ceritano, and a verdict in favor of Fizzano in Ceritano's suit against it.

Ceritano has filed motions for new trial respecting both suits, citing three exceptions to the trial judge's rulings and decision.

1. Was there sufficient and competent evidence produced by Fizzano to establish a breach of contract by Ceritano?

2. Did the court err in admitting other contract balances due from Ceritano to Fizzano relative to other jobs than the one sued on?

3. Did Ceritano establish that Fizzano breached its contract with Ceritano, and, therefore, should not Ceritano recover on its suit against Fizzano?

Before discussing the issues raised by Ceritano, a brief recitation of the facts garnered from the testimony is in order.

Fizzano is a manufacturer and supplier of masonry and concrete products, with its place of business in Delaware County. Ceritano is engaged in the business of masonry construction. The parties have dealt with each other over a period of about 15 years, in which time Fizzano supplied materials to Ceritano on many other jobs.

Sometime in early 1970 Ceritano procured the job of doing the masonry work at the Parker Park Apartments on Sheaff Lane in southwest Philadelphia, in the general area of the Philadelphia Navy Yard off Penrose Avenue. He was the masonry subcontractor for this job. In the spring of 1970 he contacted Fizzano to supply the bricks and concrete for the job. This was to be done as ordered starting in May of 1970 and Fizzano testified payment was to be made on a weekly basis at the prices stated on the invoices for the job.

By July 17, 1970, Ceritano owed Fizzano the $13,309.97 claimed, most of which had been accumulated from the beginning of July as work on the job intensified. As of July 17, 1970, Ceritano also owed Fizzano around $30,000 that had been riding on other jobs.

Fizzano testified that on July 17, 1970, he saw Ceritano and told him they wanted $10,000 on account of this job or there would be no further delivery of any

materials from them. Payment was not made and delivery ceased.

Ceritano on the other hand disclaims the agreement alleged by Fizzano to pay weekly. He asserts that the agreement is set forth on the invoices received and printed thereon:

"Terms: 2% 7 days—net 30

Past due Accts. subject to 1%

Service charge per month."

He claims these invoices constitute the written agreement of the parties against which parol evidence of any other agreement is not admissible.

Ceritano also asserted that, contrary to Fizzano, no mention was made of stopping delivery at the meeting of July 17, 1970, and that Ceritano said Fizzano would be paid when he, Ceritano, got paid which he expected on July 24, 1970. Ceritano stated that all his accounts with Fizzano, if not paid before, would go on to the end of each year when all balances were adjusted and paid. He admitted that he expected a type of job financing from Fizzano.

In any event, deliveries ceased, and Ceritano testified he had to go to a firm in New Jersey to procure the balance of material for the job, and that he had to pay $5,911.86 in excess of what he would have paid Fizzano.

This summarizes in salient respects the entire case. Fizzano was suing on its book account for this job.

I. Fizzano did prove its case by a fair preponderance of the credible and competent evidence.

Fizzano produced delivery tickets, invoices and ledger cards indicating that delivery started on May 14, 1970, and continued to July 17, 1970. Materials in amount of $13,309.97 were delivered and no payment was made, although on a weekly payment basis it should have been.

Ceritano holds forth the sundry invoices on the job and asserts these showing "2%—7 days—Net 30 [days]" are *the agreement,* and the oral testimony of Fizzano of a weekly payment is barred by the parol evidence rule. The Uniform Commercial Code of October 2, 1959, P.L. 1023, sec. 2, 12A PS §2-202, provides in pertinent part:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as *a final expression of their agreement* with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . ." (Italics supplied.)

Ceritano asserts by application of this section of the Uniform Commercial Code the "invoices" become controlling.

However, in his own defense he did not claim these "invoices" to constitute any agreement between the parties but only to be evidences of amounts due. In the first place, that was the answer he made in his pleadings,* and in the second place, that was what he testified to on the witness stand. He added, how-

---

* In the amended answer of Ceritano, Inc., to complaint no. 8589, it alleged:

"6. It is denied that defendant promised to pay the plaintiff the prices set forth in the alleged copies of plaintiff's books of account. In accordance with the parties' business custom and usage of long standing, said prices are adjusted at the end of each calendar year at which time plaintiff is paid in full for any remaining adjusted balance . . ."

"8. It is denied that the alleged copies of plaintiff's books of account reflect all credits or discounts which are or may be due defendant. Said copies do not reflect any credits due to the defendant whatsoever. Credits, discounts or overpayments due to the defendant are computed at the end of each calendar year by the parties in accordance with their business custom and usage."

ever, that as to this job, he would pay when he got paid. He did not accept the discount term of the "invoices" either. Clearly, we must conclude that these invoices in this case were no more, nor no less, than statements of amounts due. The parties never intended them to be "a final expression of their agreement." See code, supra. There was no conflict to be resolved respecting intent on these; what we conclude was admitted by both, in fact.

The parol evidence rule is not applicable unless the writing constitutes the complete agreement of the parties (Ward et al. v. Zeiler, 285 Pa. 557, 132 Atl. 798 (1926)), and where it is conceded that the writing does not properly or fully state the agreement between the parties, the writing will not be controlling: O'Bara v. Bielecka, 279 Pa. 307, 123 Atl. 812 (1924).

We have further noted that these "invoices" were printed forms, used generally in the business, and in given instances other terms may well be controlling to the complete disregard of the written terms, as here.

Further, the best evidence rule has no application where the writing alleged to have been primary evidence is subject to contradiction by parol; both classes of evidence are considered primary and independent in nature and, therefore, admissible: Pecoraro v. Pecoraro, 105 Pa. Superior Ct. 543, 161 Atl. 591 (1932).

Parol evidence was admissible to determine when payment was due on the account. The question became one of credibility. The trial judge resolved it in favor of Fizzano. Credibility is within the discretion of the trial judge sitting without jury and will not be set aside except for clear abuse of discretion: Commonwealth v. James, 197 Pa. Superior Ct. 110, 177 A. 2d 11 (1962). We now find on review that the testimony

supports the trial judge's findings, and it will not be set aside.

If we parenthetically assume, arguendo, that the parol evidence rule did operate to exclude the oral testimony as to the time within which payment was due and the 30-day payment provision of the invoice was in effect, the account was nevertheless delinquent in the amount of $303.32 as of July 17, 1970, thereby constituting a breach of contract by Ceritano.

Ceritano then asserts that plaintiff Fizzano did not prove that $13,309.97 was owing plaintiff, since only $5,810.53 worth of building materials was signed for by Ceritano's employes. Fizzano introduced its records (delivery slips, invoices and accounts receivable records), all reflecting delivery of materials to the job site. These were properly admitted into evidence under the Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, sec. 2, 28 PS §91 b. Fizzano explained that often deliveries had to be made, with Ceritano's agreement, early in the morning or late at night when no one was available to sign a receipt. Where a signagure was not obtained on a delivery slip, the delivery slip with the corresponding invoice was sent to Ceritano.

Ceritano never complained of error in these nor of nondelivery of materials. Fizzano's records and the testimony constituted sufficient proof of delivery even where the slips were not signed.

Fizzano sustained the burden of proving its case by the fair preponderance of the credible and competent testimony and evidence.

II. The trial judge properly allowed testimony of other contract balances due from Ceritano to Fizzano on other jobs being contemporaneously supplied.

Fizzano testified that as of July 17, 1970, Ceritano

owed a total balance of $43,000 on various jobs including the $13,309.97 on this one, and that stoppage of delivery of the materials to Ceritano was based on his delinquency in payments. This testimony further explained why Fizzano took the action it did. It was relevant to explain the lack of credibility in Ceritano's promises to pay. Even so, there was sufficient evidence to support Fizzano's action on this job independent of other jobs. Ceritano seeks the best of all possible worlds, but finds himself arguing "invoices," "customs," and "prior business conduct," which create inherent conflicts in both testimony and theory. The simple fact remains he was not paying his bills and Fizzano had a right to finally protect itself. Ceritano cannot complain of that.

III. Ceritano is not entitled to damages in amount of $5,911.86 for excess cost of obtaining replacement materials over and above Fizzano's contract price.

Ceritano's claim of $5,911.86 purports to be the excess paid to obtain the materials Fizzano was to supply after stopping delivery. We have decided ample evidence was introduced to sustain Fizzano's claim, which means Ceritano breached the contract.

"Where the buyer . . . fails to make a payment due on or before delivery . . . then . . . with respect to the whole undelivered balance, the aggrieved seller may: a) withhold delivery of such goods": In pertinent part from the Act of October 2, 1959, P. L. 1023, sec. 2, 12A PS §2-703.

The seller, Fizzano, therefore, exercised his legal right to stop delivery and Ceritano, being the delinquent buyer, has no right of recourse or complaint.

## ORDER

And now, to wit, April 10, 1972, it is hereby ordered, that Ceritano Brickwork, Inc.'s exceptions to the

rulings and decisions of the trial judge in the two captioned cases be and are hereby dismissed; and it is further ordered that Ceritano Brickwork, Inc.'s motion for new trial is denied.