469 A.2d 632

COMMONWEALTH of Pennsylvania

v.

Otto Martin JENSCH, Appellant.

Superior Court of Pennsylvania.

Submitted July 28, 1983.

Filed Nov. 25, 1983.

Petition for Allowance of Appeal Denied April 24, 1984.

time of its order. The court, in making its order, did consider the majority status of the children in appellee's custody.

William R. Bernhart, Reading, for appellant.

George C. Yatron, District Attorney, Reading, for Commonwealth, appellee.

Before ROWLEY, BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

Before us is an appeal from the judgment of sentence of the Court of Common Pleas of Berks County entered against the appellant, Otto Martin Jensch. The appellant was convicted, after a jury trial, of one count of possession with intent to deliver a controlled substance [1] (marijuana), and one count of delivery of a controlled substance [2] (marijuana). The appellant's post-verdict motions were denied and on June 4, 1981, the appellant was sentenced to concurrent sentences of imprisonment of one (1) to three (3) years and a fine of five hundred ($500.00) dollars. Appellant filed a timely appeal from that judgment.

The appellant presents five issues for our consideration. After reviewing his arguments, we find no error and consequently affirm the judgment of the trial court.

The appellant's first contention is that the trial court erred in not dismissing the charges against the appellant as a consequence of a violation of Pa.R.Crim.P. 1100. We disagree. The procedural history of this case, while lengthy and complicated, fails to reveal any violation of Rule 1100.

The relevant history begins on January 11, 1980 when this court, acting on an appeal from the appellant's first

1. 35 P.S. § 780–113(a)(30).

2. *Id.*

trial, reversed the judgment and remanded for a new trial, *Commonwealth v. Jensch*, 274 Pa.Super. 166, 418 A.2d 399 (1980). According to the docket entries, the certified record was remanded on February 14, 1980. Prior to the remand of the record, the Commonwealth scheduled appellant's new trial for February 10, 1980 (*See* note 3, *infra* ). On February 5, 1980, defense counsel filed a motion for continuance until March 10, 1980. The motion form included a waiver of Rule 1100 which was signed by appellant and counsel. The appellant filed two more continuance motions: one on March 10 requesting a continuance until March 21; and one on March 17 requesting a continuance until April 18, 1980. Each contained the waiver provision and each was signed by appellant and counsel.

On June 17, 1980, pursuant to a negotiated plea, the appellant entered a plea of guilty to the charge of delivery of a controlled substance. Sentencing was deferred. On July 11, 1980, and September 5, 1980, sentencing was again deferred because the district attorney was not present. On September 25, the trial judge informed the appellant that he refused to accept the negotiated plea. He instructed defense counsel to file a petition to withdraw the plea. Defense counsel filed the petition on October 2, 1980.

The guilty plea was stricken on November 3, 1980. On December 9, 1980, following a hearing in which the Honorable Warren K. Hess denied appellant's motion to dismiss under Pa.R.Crim.P. 1100(f); a jury was sworn and the case proceeded to trial. That same day a mistrial was granted.

Finally on March 10, 1981, the case proceeded to trial before the Honorable W. Richard Eshelman and a jury. The trial culminated in a jury verdict on March 12, 1981.

Based on this procedural history we conclude that there has been no violation of Rule 1100. We discern four intervals in the procedural history, each of which must be analyzed separately.

The first interval commences with the remand of the certified record from this court to the trial court on Febru-

ary 14, 1980, and ends upon the entry of appellant's guilty plea. This interval consists of a period of 121 days. When an appellate court grants a new trial, said trial must commence within 120 days of the remand of the record to the trial court. Pa.R.Crim.P. 1100(e)(2). Trial is deemed to have commenced for purpose of Rule 1100 when the appellant tenders a guilty plea. Pa.R.Crim.P. 1100(b). Since the commencement of trial occurred 121 days after the remand of the record, and because the Commonwealth filed no petitions to extend the run date, we must find at least one day to be excluded from this period under Pa.R.Crim.P. 1100(d), or we must dismiss the case with prejudice, Pa.R. Crim.P. 1100(f).

■ Herein appellant requested and was granted three continuances [3]—each containing a signed waiver of the appellant's Rule 1100 rights. Pa.R.Crim.P. 1100(d)(2) provides that "any period of time for which the defendant expressly waives Rule 1100" shall be excluded from the period for commencement of trial.

■ This court has often had occasion to consider the validity of a defendant's waiver of his Rule 1100 rights. In *Commonwealth v. Moyer*, 301 Pa.Super. 414, 416–17, 447 A.2d 1034, 1035–36 (1982), the court stated:

A defendant may temporarily waive his rule 1100 rights, like the constitutional right to a speedy trial that it was designed to protect, by signing an appropriate statement explaining the nature of the rights he is waiving, "[s]o long as there is an indication, on the record, that the waiver is the [defendant's] informed and voluntary decision." *Commonwealth v. Rodriguez*, 291 Pa.Superior

---

**3.** The three continuances were: (1) February 5 to March 10—period of 34 days; (2) March 10 to March 21—a period of 11 days; and (3) March 17 to April 18—a period of 32 days. In calculating the number of days for the first continuance, we conclude that only the period subsequent to February 14 should be included because it was at this time that jurisdiction was returned to the trial court. Thus the period of the first continuance is 25 days. Furthermore, because of the overlap between the second and third continuance, we will consider the third continuance to be 28 days.

Ct. 239, 435 A.2d 888 (1981). The signing of an appropriate waiver document is *prima facie* evidence that the waiver was informed and voluntary, *Commonwealth v. Myrick* [468 Pa. 155, 360 A.2d 598 (1976)], *supra*, and may alone establish the waiver when there is no other indication on the record that it was signed involuntarily or unknowingly, *Commonwealth v. Wilson*, 294 Pa.Superior Ct. 101, 439 A.2d 770 (1982); *Commonwealth v. Scott*, 272 Pa.Superior Ct. 236, 239, 414 A.2d 1095, 1097 (1979). Nevertheless, when the circumstances surrounding the waiver cast doubt on its voluntariness, the Commonwealth must offer more than the document itself to establish its validity. *Commonwealth v. Manley*, 491 Pa. 461, 421 A.2d 636 (1980). *Accord, Commonwealth v. Myrick, supra. See Commonwealth v. Rodriguez, supra* (colloquy). "Although an on the record colloquy is not necessary, we do require proof that the defendant understood the consequences of his act." *Commonwealth v. Manley, supra.*, 491 Pa. at 469, 421 A.2d at 640. *See also, Commonwealth v. Brown*, 497 Pa. 7, 438 A.2d 592 (1981); *Commonwealth v. Martin*, 300 Pa.Super. 497, 446 A.2d 965 (1982). The waiver forms signed by the appellant and by counsel establish *prima facie* the validity of the waiver. Appellant contends, however, that the waivers were involuntary because he signed them only so that he could return to his place of business instead of waiting for trial. This contention is specious. We conclude that this was a voluntary choice on the part of the appellant and therefore has no effect on the validity of the waiver. The period of time for which appellant waived his Rule 1100 rights, and which was therefore excluded, greatly exceeded the one day needed to be excluded. Consequently, we perceive no violation.

The second interval which we must consider is the period between the tender of the guilty plea and the appellant's withdrawal of the guilty plea. Following the tender of the guilty plea by the appellant, the trial court deferred sentencing. The record does not indicate the trial court's

reasons for so deferring. On July 11 and September 5, the trial court again deferred sentencing due to the absence of the prosecutor. On September 25, the trial judge rejected the plea bargain.

 We conclude that this period is not material to any Rule 1100 calculation. The period after the entry of a guilty plea which the court uses to determine the appropriate sentence is not part of the Rule 1100 calculation. *Commonwealth v. DiSantis*, 293 Pa.Super. 154, 158, 437 A.2d 1252, 1254 (1981); *Commonwealth v. Juliano*, 282 Pa.Super. 226, 422 A.2d 1088 (1980). The period herein was used by the court to determine whether the sentence negotiated by the parties was appropriate. Furthermore, it was a period after the commencement of trial and therefore irrelevant to Rule 1100. *Commonwealth v. Lewis*, 295 Pa.Super. 61, 440 A.2d 1223 (1982); *Commonwealth v. DiSantis, supra*. Additionally, we must consider this interval to extend through November 3; the time when the court ordered the withdrawal of the guilty plea. *Cf. Commonwealth v. Whittall*, 304 Pa.Super. 258, 261–66, 450 A.2d 669, 671–73 (1982).

 The third interval we must consider is the period following the withdrawal of the guilty plea until the commencement of trial on December 9. It is well established that the withdrawal of a guilty plea, like the grant of a new trial, begins a new 120 day period in which the Commonwealth must bring a defendant to trial. *Commonwealth v. Whittall, supra; Commonwealth v. DiSantis, supra; Commonwealth v. Bytheway*, 290 Pa.Super. 148, 434 A.2d 173 (1981). Herein trial commenced 36 days after the withdrawal of the guilty plea. There is no violation.

 Finally, we consider the interval between December 9, 1980 and March 10, 1981. On December 9, a mistrial was declared by the court. On March 10, a jury was selected and the appellant's trial (which led to the conviction upon which this appeal is based) commenced. It is clear that the Commonwealth has 120 days following mistrial to bring a

defendant to trial. Pa.R.Crim.P. 1100(e)(1). *Commonwealth v. Manley*, 491 Pa. 461, 421 A.2d 636 (1980); *Commonwealth v. Bytheway, supra.* The appellant's trial commenced 90 days after the declaration of the mistrial. Thus, we perceive no violation of appellant's Rule 1100 rights.

The appellant's second argument is two-fold: (1) the verdict is against the weight of the evidence; and (2) the evidence is insufficient to sustain the verdict. We shall address these contentions separately.

▉▉▉▉ A determination of whether a new trial should be granted because the verdict is against the weight of the evidence is a determination committed to the discretion of the trial court. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972); *Commonwealth v. Laing*, 310 Pa.Super. 105, 456 A.2d 204 (1983). The trial court's decision will not be reversed absent an abuse of discretion. *Commonwealth v. Zapata, supra; Commonwealth v. Miller*, 303 Pa.Super. 504, 450 A.2d 40 (1982). Moreover, "It is settled that a new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Id.* 303 Pa.Super. at 509, 450 A.2d at 42; *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 434 A.2d 191 (1981).

The Commonwealth presented the testimony of one Douglas Rentschler, a deputy sheriff in Berks County, who was working as an undercover agent in conjunction with the Reading Bureau of Police Vice Squad. Rentschler had been introduced to the appellant by one Janis Miller, who had formerly dated the appellant. Miller was also working with law enforcement officials as an informant.

On the evening of May 18 appellant returned a call from Rentschler and in a telephone conversation about 10:00 p.m. appellant asked Rentschler if Rentschler was looking for some "grass", and Rentschler replied that he was looking for some "weight", meaning a quantity of grass. Appellant

314

told Rentschler that he would call him back and did so around 11:55 p.m. on May 18, 1977. Appellant told Rentschler that his friend only had 30 pounds and that he (appellant) would call Rentschler back the next day. Rentschler called appellant on May 19, 1977, at 7:15 p.m., when the appellant stated that his friend only had 25 pounds, that his friend had to go to Allentown, Pennsylvania, and that appellant would call Rentschler later that evening around 9:00–10:00 p.m. Appellant called Rentschler at approximately 10:00 p.m. and arrangements were made to meet in Room 1406 of the Abraham Lincoln Motor Inn in Reading at 11:15 p.m., to transact a purchase of 25 pounds of marijuana at $350 cash per pound. Rentschler told appellant that he would be bringing his "man" along, who was Detective William McGuire of Reading Bureau of Police Vice Squad Unit. The officers also reserved Room 1404, the room adjoining Room 1406. Rentschler, McGuire and Lieutenant Frederick Yerger of the Reading Bureau of Police went to the Motor Inn around 10:45 p.m. to set up the rooms, with Yerger standing by in Room 1404. Appellant arrived at Room 1406 around 11:25 p.m. After introducing appellant to undercover agent McGuire and engaging in small talk, appellant revealed a plastic bag containing vegetable matter which appeared to Rentschler to be marijuana, and appellant stated that it was a sample but that the "stuff" he had for them was better. Appellant then removed the vegetable matter and began to separate stems and leaves on a telephone book. Appellant rolled two marijuana cigarettes. Appellant passed one of the marijuana cigarettes to Rentschler who lit it and simulated smoking it, then passed it to McGuire who also simulated smoking it. They then discussed "weight" again and appellant stated that he could get only 24 pounds at $350 per pound, or $8,400 worth. Appellant told them he did not have the marijuana with him and that they would have to go to the Pep Boys parking lot in Reading where his car was parked. Before leaving, Rentschler repeated in a loud voice their destination so that Yerger could hear him in the next room and call other police units in the area for surveillance. Around 11:50 p.m.,

Rentschler, McGuire and appellant left the room, got into McGuire's personal car and proceeded to the Pep Boys parking lot with the understanding that they would return to the Motor Inn. In several minutes they arrived at the parking lot and appellant directed McGuire to drive up to his car. Appellant opened the trunk of his car revealing two green garbage bags which contained green vegetable matter. As they stood at the trunk of appellant's car, they again discussed a price of $8,400 for both bags, but no cash was exchanged. McGuire then checked the contents of the green bag which he suspected to be marijuana. Appellant lifted the bag several inches and handed the bag to McGuire who removed the bag from the trunk. McGuire then raised his hand to his head, a predesignated signal to backup police units, and appellant was placed under arrest.

At trial, counsel stipulated that Paul Skrimcovsky, a state police criminologist, was an expert at drug identification. Skrimcovsky testified that the green vegetable matter delivered by appellant to the police was marijuana. McGuire testified that in his opinion the quantity of marijuana in the two bags was sufficient to constitute a potential dissemination of the drug, the quantity being more than would be expected to be used by a single individual.

Appellant, in an effort to show that he was entrapped, testified in his own behalf, as did his girlfriend, Barbara Snedaker, concerning communications and meetings with Rentschler and with a Janis Miller, who was an undercover agent working with Rentschler.

Appellant asserts that his evidence offered in support of the entrapment defense overwhelms the evidence supporting the conviction. We disagree. The appellant's entrapment defense depended for the most part on his own credibility. Credibility is an issue for the finder of fact that will not be disturbed on appeal. The trier of fact is free to believe all, part or none of the testimony. *Commonwealth v. Pitts*, 486 Pa. 212, 404 A.2d 1305 (1979). We find no abuse of discretion in the trial court's refusal to grant a new trial.

316

■ Appellant also asserts that the evidence is insufficient to support the verdict.

The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Lovette,* 498 Pa. 665, 669, 450 A.2d 975, 977 (1982).

We have reviewed the evidence in light of this standard and there is no doubt that it is sufficient to sustain the verdict.

■ Appellant's third argument is that the trial court erred in its charge to the jury on the defense of entrapment. The appellant submitted three points for charge, each of which, in variegated language, placed the burden of disproving entrapment on the Commonwealth. The trial judge rejected these points for charge.

The appellant, however, has failed to preserve this issue for appellate review by failing to specifically object to the trial judge's charge as required by Pa.R.A.P. 302(b). *See also Commonwealth v. Todaro,* 301 Pa.Super. 1, 7, 446 A.2d 1305, 1308 (1982) (Hoffman, J. concurring); *Crosbie v. Westinghouse Elevator Company,* 297 Pa.Super. 304, 443 A.2d 849 (1982). This issue has been waived.

■ The appellant also argues that a new trial should be granted because the trial judge improperly excluded testimony about statements allegedly made by Janis Miller, a Commonwealth informer. Miller was not present and did not testify at trial. During the cross-examination of Douglas Rentschler and the direct examination of Barbara Snedaker, counsel made an offer of proof at sidebar that in early May, 1977, at the Rathskeller Bar in Boyertown, Miller said to Snedaker and Rentschler, "I'll get his ass." (referring to the appellant). The trial judge ruled that the statement was hearsay and refused to admit it.

However, we need not determine whether the trial court's ruling was in error. The statement which counsel sought to introduce was brought in during the testimony of Barbara Snedaker (N.T. March 12, 1980, pp 164–165). The Commonwealth did not object. Therefore, the error, if any, was harmless.

■ The appellant's final contention is that the trial court erred in refusing to give the appellant's requested points for charge numbers 9 and 11. Once again appellant has failed to preserve this issue by raising a specific objection to the trial court's charge. Pa.R.A.P. 302(b). *Commonwealth v. Todaro, supra; Crosbie v. Westinghouse Elevator Company, supra.*

Since we find no merit in the appellant's arguments, the judgment of sentence of the trial court is affirmed.